[File No. 7010]

J. E. NOVAK, Appellant, v. ANNA M. NOVAK, Respondent.

(24 NW2d 20)

Opinion filed July 19, 1946

*Floyd B. Sperry,* for appellant.

*George F. Shafer,* for respondent.

NUESSLE, J. In 1934, plaintiff brought this action for a divorce. The defendant, answering, denied the allegations of the complaint on which plaintiff predicated his demand for relief and, interposing a cross-complaint, asked for a decree for separation. The case was tried on the issues as thus made. The

court found for the defendant, denied the divorce and decreed a separation pursuant to the provisions of Chapter 14–06 §§ 14–0601 to 14–0606, both inclusive, Revised Code 1943. The decree awarded the property of the parties to the plaintiff but required the plaintiff to pay to the defendant the sum of $2000, to be paid either in a lump sum or in installments of $15 per month, with interest on the unpaid portions thereof at the rate of four per cent per annum. Thereafter the parties lived apart. In 1939, plaintiff applied to the court for the revocation of the decree for separation, and for a decree of absolute divorce pursuant to the provisions of § 14–0605, Revised Code 1943, on the ground that more than four years had elapsed since the decree for separation was entered and that the parties had lived apart continuously during all of the time subsequent thereto. Upon hearing the application was denied. Again, in 1944, the plaintiff applied to the court for a revocation of the decree for separation, for a modification of the order entered in the first instance requiring him to pay the sum of $2000 to the defendant, and for an absolute divorce. The application was resisted. A hearing was had and the court again denied the application. Whereupon the plaintiff perfected the instant appeal.

Shortly stated, the record fairly shows the following facts: Plaintiff and defendant were married in Nebraska in 1900. Plaintiff then was 23 years old, defendant 25. They moved to North Dakota in 1902, where plaintiff filed upon a homestead. At the time of the marriage plaintiff had some farm equipment and the defendant about $500 in cash. Apparently they were moderately prosperous in their new home. They bought additional land. The defendant was frugal and hard-working and accumulated some $1300 from the sale of chickens, turkeys, etc., which she deposited in a local bank. Hard times came. The bank failed. Plaintiff owed the bank and an adjustment was made whereby the defendant's deposit was set off against his obligation. Two daughters were born of the marriage. Both of them married and established homes of their own. In 1930, plaintiff left the farm and moved to a small town. He refused to support the defendant and to provide living quarters for her.

In 1934, plaintiff brought this action for divorce, with the result heretofore stated. Thereafter the parties continued to live apart. Plaintiff, disregarding the provision of the decree for separation requiring him to do so, made no payments to the defendant. She was without means and was compelled to maintain herself by working as a housekeeper and scrubwoman. This she can no longer do because of ill health. At various times she wrote the plaintiff, and on one occasion in 1943, when she was ill and had to undergo surgery, she wrote and told him of her condition and asked for financial assistance. In no instance did the plaintiff reply to her letters. In 1939, plaintiff applied to the court for a revocation of the decree for separation. This application was resisted and, after hearing, was denied. Again in 1944, a similar application was made, plaintiff asking for the revocation of the decree for separation, for a modification of the provision requiring him to pay $2000 to the defendant, and for an absolute divorce. At the time of making the application in 1939, plaintiff offered to pay $10 per month for the support of the defendant if the application were granted and a divorce decreed. And when in 1944 he made his second application for revocation of the decree, he offered to pay $100 if it were granted and to make further payments in the future. The defendant resisted the application for divorce because of religious scruples. She is and has been willing to effect a reconciliation. Plaintiff, however, says that he is not, and that a reconciliation is not only improbable but impossible. Though at the time of making his applications for revocation of the decree and for a divorce plaintiff offered to make payments for the benefit of the defendant, he has at all times contended that he has been unable to comply with the requirements of the original decree as to payments on the ground he has no means and is unable to make them. As stated above, pursuant to the original decree he was given all the real and personal property owned by the parties. This property, however, was subject to mortgage and he has since lost the real property on mortgage foreclosure and disposed of the personal property. But it further appears that in the meantime he has worked at various occupations, includ-

ing the operation of a saw mill, that he has held the office of county commissioner of the county of his residence, that he has served as a member of the welfare board, and during all of this time he has received a pension from the government of the United States during the greater portion thereof in the sum of $50 per month. At the time he made the instant application he was earning in addition thereto $25 per month and his board and room. And there is room for the inference that he has acquired some property which he has concealed by one device or another.

Chapter 14-06, Revised Code 1943 (§§ 14-0601 to 14-0606, both inclusive) deals with the subject of separation from bed and board. Section 14-0601 provides: "A decree of separation from bed and board forever, or for a limited time, may be decreed by a district court of this state, upon such evidence as shall be deemed sufficient, on complaint of a married woman or a married man for any cause for which a divorce might be decreed." And § 14-0605, provides:

"When a decree for separation, forever or for a limited period, shall have been pronounced, it may be revoked at any time thereafter by the judge by whom it was pronounced or by his successor, under such regulations and restrictions as the judge may impose. Application for revocation may be made by either party to the decree. At least ten days' and not more than twenty days' notice of such application must be given to the other party to the decree by service of the moving papers to be used on such application. Service of the moving papers may be made in the same manner as service of a summons in a civil action. If it shall be made to appear on the hearing of such application that the original decree has been in existence and force for more than four years and that reconciliation between the parties to the marriage is improbable, the judge may revoke the separate maintenance decree and, in lieu thereof, may render a decree absolutely divorcing the parties, and at the same time may make such final division of the property, or may direct the payment of such alimony, and make such orders with reference to

minor children, if any, as justice and the merits of the case and the circumstances of the parties shall warrant."

Plaintiff predicates error on the court's refusal to revoke the decree of separation and grant him a divorce. In this behalf, he contends that on the facts shown by the record the judge had no discretion in the matter and that he was entitled to have his application granted as a matter of right. In other words, his contention is that the word "may" as used, wherein the statute provides: "If it shall be made to appear on the hearing of such application that the original decree has been in existence and force for more than four years, and that reconciliation between the parties to the marriage is improbable, the judge *may* revoke the separate maintenance decree and in lieu thereof *may* render a decree absolutely divorcing the parties . . . ." is mandatory and not permissive. The case turns on this contention.

Section 1–0202, Revised Code 1943, provides: "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." And § 1–0203, provides: "Words and phrases shall be con-construed according to the context and the rules of grammar and the approved usage of the language. Technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law, or as are defined by statute, shall be construed according to such peculiar and appropriate meaning or definition."

The word "may" as ordinarily used is permissive and not mandatory. It means "to have power; to be able." Webster's New International Dictionary, 2d ed. Ordinarily, when used in a statute it is permissive only and operates to confer discretion. Bechtel v. Winnebago County, 217 Iowa 251, 251 NW 633; 59 CJ pp 1079 et seq. But it is sometimes construed as being mandatory and the equivalent of the word "must." This depends, however, upon the context and the circumstances under which it is used. See Webster's New International Dictionary, 2d ed: Words & Phrases, pp 774 et seq (Perm. Ed.); 59 CJ pp 1082 et

seq; 50 Am Jur 52, Statutes. This court has heretofore had occasion to give it such a construction. See Pearce v. North Dakota Workmen's Comp. Bureau, 67 ND 512, 274 NW 587; State v. Barry, 14 ND 316, 103 NW 637; State v. Kent, 4 ND 577, 62 NW 631, 27 LRA 686. It was held in these cases, in effect, that permissive words in a statute that confers power and authority upon public officers or bodies may be held to be mandatory where the act authorized to be done concerns the public interest or the rights of individuals. But, after all, the purpose of construction is to ascertain and effectuate the legislative intent. The rule thus stated is merely a rule of construction and unless it appears that it was the legislative intent to enact a mandatory statute, it has no application. See 50 Am Jur 51, Statutes.

In the case of People ex rel. Comstock v. Syracuse, 59 Hun 258, 12 NYS 890, affirmed by the court of appeals, 128 NY 632, 29 NE 146, the court, after a most comprehensive examination and review of authorities, says: "A careful examination of the authorities bearing upon this subject discloses quite clearly, we think, that the decisions holding that permissive words should sometimes be construed as mandatory have been based upon the supposed intent of the legislature. While many general expressions have been used which, when taken alone, might seem to indicate that the word 'may' or words of similar import should be construed as mandatory when the public interest or the rights of individuals are involved, independent of any question of legislative intent, still, when the cases are examined, it will be seen such construction has prevailed only in cases where the statute under consideration, when taken as a whole, and viewed in the light of surrounding circumstances, indicated a purpose on the part of the legislature to enact a law mandatory in its character. In other words, the courts have sought the intent of the law-makers and, when found, they have carried out such intent by construing permissive words as mandatory. These cases are in harmony with the general and fundamental rule that statutes should be so construed as to give effect to the pur-

pose of the law-makers." See also Morse v. Press Pub. Co. 71 App Div 351, 75 NYS 976.

The statute, § 14–0605, supra, as originally enacted (§ 5, chapter 132, Session Laws 1927) read: "When a decree for a separation forever, or for a limited period, shall have been pronounced it may be revoked at any time thereafter by the same court by which it was pronounced under such regulations and restrictions as the court may impose, on the joint application of the parties upon their producing satisfactory evidence of their reconciliation." This section was amended to its present form by chapter 105, Session Laws 1933. It is to be noted that pursuant to this amendment the decree for separation may be revoked and a divorce decreed on the application of either party, but that the application must be made to the judge or his successor who pronounced the decree in the first instance. The statute, as amended, does not say "by the court" as did the original statute. It says "by the judge by whom it was pronounced or by his successor." Why, if the judge has no discretion in the matter? It contemplates that the judge who decreed the separation or his successor shall be the judge empowered to revoke the decree and only under such regulations and restrictions as he may deem proper. This, obviously, to insure as nearly as possible, that the judge, acquainted with all the facts and circumstances in connection with the whole suit, should hear and dispose of the application. And it would seem that the purpose of such a requirement is to enable him to exercise his discretion in the matter. Certainly there is nothing in the statute as thus amended to indicate that the legislature intended it to be a mandatory enactment. On the contrary there is much to indicate that the legislature intended it should be discretionary with the judge as to whether the decree should be revoked and a divorce granted.

Chapter 14–05, §§ 14–0501 to 14–0526, both inclusive, Revised Code 1943, deals with the subject of divorce. Pursuant to the provisions of this chapter a divorce may be granted for any one of the seven causes therein enumerated. Section 14–0503. Will-

ful desertion and willful neglect are among the causes thus enumerated. Separation from bed and board is not. A divorce restores the parties to the state of unmarried persons. Section 14–0502. A decree of separation from bed and board confers upon both the husband and wife all the rights of property, business and contracts as if unmarried, and relieves both from all obligations of maintenance except as required by the decree. Section 14-0604. But the marriage remains undissolved. And the legislature has seen fit to consider divorce and separation from bed and board as separate and distinct subjects. In enumerating the causes for which divorce shall be granted in chapter 14–05, it did not include separation from bed and board as one of those causes, though it might have done so. Pursuant to this chapter, only the party aggrieved—the party who establishes one or more of the enumerated causes—is entitled to a divorce. In such case the court has no discretion. On the other hand, giving the construction to § 14–0605 for which plaintiff contends, either party can make application for a revocation of a decree for separation and the court must, if it appears that a reconciliation between the parties to the marriage is improbable, revoke the decree and absolutely divorce them though the application be made by the guilty party and resisted by the innocent one. Such a consequence is inconsistent with the policy evidenced by chapter 14–05, pursuant to which only an aggrieved party is entitled to a divorce. We think it is obvious that the legislature used the word "may" advisedly with the intention that the judge should exercise his discretion in determining whether or not the decree should be revoked and a divorce granted.

The instant case clearly illustrates a consequence that may result from holding the provisions of § 14–0605, supra, to be mandatory. Plaintiff sued for a divorce on the ground of extreme cruelty on the part of the defendant. The defendant took issue with the allegations of the complaint and, counterclaiming, asked for separation on the grounds of willful desertion and neglect. The court found for the defendant that there was no cruelty on her part and that there were both desertion and neg-

lect on the part of plaintiff. Though entitled to a divorce the defendant had conscientious scruples against divorce and instead asked for a decree for separation, which the court granted her. In any event, the court could not have done other than deny the plaintiff's prayer for a divorce. Had the defendant not asked for affirmative relief, the judgment which needs must have been entered would have been final and conclusive against the plaintiff though the parties foreverafter continued to live separate and apart. The decree for separation from bed and board did, in fact, provide that the plaintiff should make certain payments for the benefit of the defendant. Though able to comply at least to some extent with this requirement, he flouted the order of the court and did absolutely nothing in the way of compliance with it. The defendant was in ill health and had no means. She was compelled to support herself by menial employment and when unable longer to do so, to depend upon her daughters for sustenance. She asked the plaintiff for help. He disregarded this appeal. She was willing to become reconciled with him. He refused and said that reconciliation was impossible. Now, after all these years of dereliction he comes into court contending that the judge who pronounced the decree for separation has no discretion in the matter but must, pursuant to the terms of the statute, grant him a divorce as a matter of absolute right. We cannot believe that the legislature intended that such a result might be possible.

Plaintiff cites, Gerdts v. Gerdts, 196 Minn 599, 265 NW 811; Hava v. Ghavigny, 143 La 365, 78 So 594 and Goudeau v. Goudeau, 146 La 742, 84 So 39, as sustaining his contention with respect to the construction to be put upon the word "may." These cases, however, can have little weight here. They arose under statutes wholly different from chapter 14–06, supra, and which specifically made separation for a given length of time a cause for divorce. In this connection, see also Sitterson v. Sitterson, 191 NC 319, 131 SE 641, 51 ALR 760 and note; George v. George, 56 Nev 12, 41 P2d 1059, 97 ALR 983 and note.

Plaintiff also predicates error on the denial of his application

for a modification of the order requiring the payment of money to the defendant. He insists that he has been in ill health and unable to make such payments. The judge made no direct finding in this regard, but he was the judge who tried the case and who pronounced the decree of separation. He heard and denied the first application for its revocation and modification. He was in a position to observe the witnesses as they testified. Reading the record we can come to no other conclusion than that there was no error in denying this relief.

The order of the district court denying plaintiff's application is affirmed.

CHRISTIANSON, Ch. J., and BURR, BURKE and MORRIS, JJ., concur.