2009 ND 22

Judith MIDTHUN, Claimant
and Appellee

v.

**NORTH DAKOTA WORKFORCE
SAFETY AND INSURANCE,**
Appellant

and

**Mercy Hospital, Respondent.**

No. 20080137.

Supreme Court of North Dakota.

Feb. 5, 2009.

Rehearing Denied April 7, 2009.

Stephen D. Little, Dietz & Little Lawyers, Bismarck, ND, for claimant and appellee.

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, ND, for appellant.

VANDE WALLE, Chief Justice.

[¶ 1] North Dakota Workforce Safety and Insurance ("WSI") appealed a district court judgment reversing WSI's decision to terminate Judith Midthun's partial disability benefits. We conclude the district court erred when it found WSI's discretion to waive the limitation on partial benefits was constrained by N.D.C.C. § 65-05-10(2). We therefore reverse the judgment of the district court and reinstate WSI's order discontinuing Midthun's partial disability benefits.

I.

[¶ 2] Judith Midthun began receiving temporary total disability benefits from WSI on April 24, 1999, in connection with a right shoulder injury she sustained while working as a CNA at Mercy Hospital in Valley City. During the summer of 2000, she returned to the workforce, obtaining a position as an optical technician for Duling Optical. She worked approximately 20–23 hours per week in this new position. Due to her return to employment, WSI reduced

Midthun's benefits to partial disability benefits.

[¶ 3] Under N.D.C.C. § 65–05–10(2), the amount of time during which a claimant may receive partial disability benefits is limited to a period of five years. The statute states that WSI "may waive" the five-year limit if the claimant has experienced a catastrophic injury, or has long-term restrictions from the compensable work injury and is working less than twenty-eight hours per week. N.D.C.C. § 65–05–10(2). At an administrative hearing on Midthun's claim for benefits, Timothy Wahlin, WSI's staff counsel, testified as to the agency's prior and current procedures for awarding and discontinuing partial disability benefits. Wahlin stated that WSI had previously operated under the belief that, if a claimant was working less than 28 hours per week, the five-year cap on partial disability benefits did not apply. Wahlin classified this belief as a misinterpretation of the law. For most of the period that Midthun received partial disability benefits, WSI applied this interpretation to her claim; on several occasions claims analysts reviewed her claim and made notations reaching conclusions akin to: "5 year TPD cap does not apply to [Midthun] at this time as she is working under 28 hours."

[¶ 4] Wahlin testified that WSI later determined the five-year limitation did apply to claimants with long-term restrictions who worked less than 28 hours per week. In approximately 2004, WSI adopted a new procedure whereby the agency reviewed a claimant's benefits before the five-year period ended, and determined whether or not to award a waiver of the limitation. The review considered whether a claimant met one of the two descriptions laid out in the statute, i.e., catastrophic injury, or long-term restrictions and working under 28 hours per week, and then decided whether there was some form of "extraordinary circumstances" involved which would justify the waiver. Wahlin testified that WSI also began to review its files for those already receiving partial disability benefits to determine whether waivers on the five-year limitation should be granted.

[¶ 5] Among those whose files were reviewed was Midthun. On December 16, 2005, WSI sent her a letter informing her she had received partial disability benefits for a period exceeding the five-year limitation, and that WSI would discontinue her benefits the following month. Midthun requested reconsideration from WSI, and on February 8, 2006, WSI issued an order concluding she was not entitled to further partial disability benefits. Midthun demanded a formal hearing from the agency, which resulted in WSI's Final Order affirming its decision to deny further partial disability benefits. Midthun appealed the final order in district court, designating as her sole specification of error: "This appeal is taken upon the grounds that the decision by WSI in its July 20, 2007, Final Order is not in accordance with the law." The district court reversed WSI's order, finding Midthun met the requirements of N.D.C.C. § 65–05–10(2), and "WSI's discretion to waive the five-year cap on TPD benefits is constrained by the express terms" of the statute.

II.

[¶ 6] On appeal, WSI contends it properly applied the provisions of N.D.C.C. § 65–05–10(2) by denying Midthun's waiver, and further argues it had the discretion to decide whether or not to waive the limitation. Midthun argues WSI did not have the discretion to deny her further partial disability benefits, stressing the fact that she met the statutory requirement that she had long-term restrictions

and worked less than 28 hours per week. Midthun also asserts on appeal that WSI actually waived the five-year cap in her case, pointing to the claims analysts' notations which concluded that the waiver did not apply to her claim.

[¶ 7] The Administrative Agencies Practice Act requires a party who appeals from an administrative hearing officer's decision to file a notice of appeal and specifications of error. N.D.C.C. § 28–32–42(4). A party appealing a hearing officer's decision must file "reasonably specific" specifications of error detailing which matters are at issue, so as to alert the agency, other parties, and the court of the particular errors claimed. *Vetter v. North Dakota Workers Comp. Bureau*, 554 N.W.2d 451, 454 (N.D.1996). Boilerplate specifications of error which are general enough to apply to any administrative agency appeal are not tolerated by this Court, and are ripe for dismissal. *Dettler v. Sprynczynatyk*, 2004 ND 54, ¶ 15, 676 N.W.2d 799; *see also Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 14, 663 N.W.2d 161 ("Sonsthagen's specifications of error were not sufficiently specific to identify the impartiality argument he now raises on appeal. Because Sonsthagen failed to satisfy the requirements of N.D.C.C. § 28–32–42(4), we will not consider this argument."). When a party does not enumerate an issue in their specifications of error, we will not consider that issue on appeal. *See Bjerklie v. Workforce Safety and Ins.*, 2005 ND 178, ¶ 7, 704 N.W.2d 818 (refusing to review issues not enumerated in specifications of error).

[¶ 8] In this case, Midthun's specification of error reads simply that, "This appeal is taken upon the grounds that the decision by WSI in its July 20, 2007, Final Order is not in accordance with the law." We begin by noting that this language treads dangerously close to boilerplate, as it appears Midthun has adopted the phrase directly from the statute denoting occasions when a court will reverse the order of an agency. *See* N.D.C.C. § 28–32–46(1) ("The order is not in accordance with the law."). Furthermore, this language concerns only the legal question of WSI's interpretation of the statute. Although raised as an issue on appeal, whether WSI did waive the limitation in a particular circumstance is a factual issue not mentioned or hinted at in Midthun's specification of error. *See Von Ruden v. North Dakota Workforce Safety and Ins. Fund*, 2008 ND 166, ¶ 14, 755 N.W.2d 885 ("The existence of waiver is generally a question of fact."). Therefore, looking at the specifications of error in the light most favorable to Midthun and recognizing that WSI has not argued it was unaware of the legal issue, we consider the legal question of whether WSI *can* waive the limitation in cases where a claimant meets one of the exceptions under N.D.C.C. § 65–05–10(2), and not whether WSI *did* waive the limitation in Midthun's claim.

III.

[¶ 9] Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision. *Grand Forks Prof'l Baseball, Inc. v. North Dakota Workers Comp. Bureau*, 2002 ND 204, ¶ 8, 654 N.W.2d 426. On appeal, we review the decision of the administrative agency, and not the decision of the district court. *Steele v. North Dakota Workmen's Comp. Bureau*, 273 N.W.2d 692, 696 (N.D.1978). We review the agency decision in the same manner as the district court reviews an administrative agency order. N.D.C.C. § 28–32–49. The Administrative Agencies Practice Act sets forth several factors, any of which must be present to warrant the reversal of an agency's final order. N.D.C.C. § 28–32–46. In

the present case, we will affirm the decision of WSI unless the order is not in accordance with the law. N.D.C.C. § 28–32–46(1).

[¶ 10] When construing a statute we look first to the words used in the statute, giving them their plain, ordinary, and commonly understood meaning. N.D.C.C. § 1–02–02 ("Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears."); *Lee v. North Dakota Workers Comp. Bureau,* 1998 ND 218, ¶ 11, 587 N.W.2d 423. This Court's primary objective is to ascertain the Legislature's intent. *Lee,* 1998 ND 218, ¶ 11, 587 N.W.2d 423.

[¶ 11] WSI contends it correctly interpreted N.D.C.C. § 65–05–10(2) as providing the agency with discretion over whether or not to waive the five-year limitation on partial disability benefits, and argues the district court erred when it found the agency did not have such discretion. Section 65–05–10(2), N.D.C.C., provides:

> Benefits must be paid during the continuance of partial disability, not to exceed a period of five years. The organization may waive the five-year limit on the duration of partial disability benefits in cases of catastrophic injury … or when the injured worker is working and has long-term restrictions verified by clear and convincing objective medical and vocational evidence that limits the injured worker to working less than twenty-eight hours per week because of the compensable work injury.

The issue in this matter, thus, turns on the meaning and effect of the phrase "may waive," and whether this language allows WSI discretion to waive the limitation, or whether they must waive when a claimant falls under one of the statutory exceptions.

[¶ 12] This Court has previously held that the use of the word "may" in a statutory scheme is ordinarily understood as "permissive rather than mandatory and operates to confer discretion." *Matter of Adoption of K.S.H.,* 442 N.W.2d 417, 420 (N.D.1989). This interpretation has been applied and acknowledged throughout a number of cases heard before this Court. *See id.* at 419–20 (holding statutory language that a court "may terminate the parental rights of a parent" if certain grounds exist gives the court discretion to terminate those rights, even if such grounds are found in a case); *Bernhardt v. Bernhardt,* 1997 ND 80, ¶ 9, 561 N.W.2d 656 (holding language that "gross income *may* be imputed at an amount less than required" by an Administrative Code section is permissive due to the word "may") (emphasis in original); *Harding v. City of Dickinson,* 76 N.D. 71, 80, 33 N.W.2d 626, 632 (1948) ("The word 'may' is, when used in its ordinary meaning, permissive rather than compulsory.").

[¶ 13] We only construe the word "may" as "must" where the context or subject matter compels that construction. *Basin Elec. Power Co-op. v. North Dakota Workers Comp. Bureau,* 541 N.W.2d 685, 689 (N.D.1996). In *Basin Elec. Power,* we did have occasion to consider this rare exception, and indicated the word "may" imposed a mandatory duty as it pertained to a workers compensation statute. In that case, we held that if certain statutory language regulating WSI appeals was ambiguous, we would interpret the language in favor of the purpose of the law. *Id.* We noted that, since the purpose of workers compensation law was to provide workers with sure and certain relief and interpreting "may" as permissive in that case would put claimants at a disadvantage, the language should be read as mandatory. *Id.* However, *Basin Elec.*

*Power* is distinguishable from the present case, as we see no ambiguity in the statutory scheme before us. A statute is ambiguous if it is susceptible to meanings that are different, but rational. *Public Service Comm'n v. Wimbledon Grain Co.*, 2003 ND 104, ¶ 20, 663 N.W.2d 186. Here, N.D.C.C. § 65–05–10(2) includes a five-year limitation on partial disability benefits, and clearly states that WSI "may waive" that limitation only in certain circumstances. The language of the statute does not indicate that WSI is required to waive the limitation upon the occurrence of those circumstances; rather, WSI cannot waive the limitation unless those circumstances are present.

[¶ 14] Furthermore, when N.D.C.C. § 65–05–10(2) was enacted, the legislature was aware of the distinction between using the terms "may" and "shall." Section 65–05–10(2), N.D.C.C., was enacted during the 1991 Legislative Session. *See* 1991 N.D. Laws 2115–16. In 1991, the North Dakota Legislative Drafting Manual stated that the word "shall" is used when a duty is imposed on a person or body; conversely, the Manual stated that "may" is used to "confer a power, privilege, or right." *See* North Dakota Legislative Drafting Manual, pp. 116–17, 1991 Edition. We have long held the purpose of statutory construction is to ascertain and effectuate legislative intent, and unless it appears that it was the legislative intent to enact a mandatory statute, we will not construe it as such. *Novak v. Novak*, 74 N.D. 572, 578, 24 N.W.2d 20, 23 (1946). To read § 65–05–10(2) as requiring WSI to exercise the waiver would require this Court to read "may" as "must" when there is no indication such a requirement was intended by the legislature. We decline to do so.

[¶ 15] We reverse the judgment of the district court and reinstate WSI's order discontinuing Judith Midthun's partial disability benefits.

[¶ 16] CAROL RONNING KAPSNER, and JOHN C. McCLINTOCK, JR., D.J.

[¶ 17] The Honorable JOHN C. McCLINTOCK, Jr., D.J., sitting in place of CROTHERS, J., disqualified.

SANDSTROM, Justice, concurring in the result.

[¶ 18] As this Court said in *Vetter v. North Dakota Workers Comp. Bureau*, 554 N.W.2d 451, 454 (N.D.1996), "Summary affirmance of an administrative agency decision is appropriate if an appellant's specifications of error 'fail to specifically identify any error with any particularity.' "

[¶ 19] The "specifications of error" in this case contain only boilerplate, with no errors identified with particularity:

This appeal is taken upon the grounds that the decision by WSI in its July 20, 2007, Final Order is not in accordance with the law.

[¶ 20] These specifications of error are similar to those this Court held insufficient in *Vetter*:

Vetter appealed to the district court, serving the following specification of error with her notice of appeal:

"This appeal is taken upon the grounds that the decision by the Bureau is not in accordance with the law; that certain Findings of Fact made by the Bureau are not supported by a preponderance of the evidence; and that the Conclusions of Law made by the Bureau are not supported by its Findings of Fact."

*Id.* at 453.

[¶ 21] The inadequate specifications here contrast with adequate specifications filed in other cases, identifying the specific findings of fact and specific conclusions of

law by number and explaining specifically why they are claimed to be in error.

[¶ 22] Under N.D.C.C. § 28–32–42(4) and our clear case law, the district court should have summarily affirmed WSI's order. I agree with the majority that the judgment of the district court must be reversed, but for the reasons stated here.

[¶ 23] Dale V. Sandstrom

MARING, Justice, concurring and dissenting.

[¶ 24] I concur with Parts I and II of the majority opinion and with the conclusion in Part III that N.D.C.C. § 65–05–10(2) does grant WSI discretion to waive the five-year cap on partial disability benefits. However, I dissent because the majority's analysis of WSI's interpretation of N.D.C.C. § 65–05–10(2) cannot end there.

[¶ 25] WSI has interpreted N.D.C.C. § 65–05–10(2) as granting it absolute discretion to waive or not to waive the five-year cap on partial disability benefits. In *Lass v. N.D. Workmen's Comp. Bureau*, 415 N.W.2d 796, 798 (N.D.1987), the Bureau, now known as WSI, argued it had absolute discretion on the subject of reopening a claim even when there had been a change in the claimant's medical condition. Our Court held the Bureau's interpretation of the statute was contrary to the language of the statute and the circumstances surrounding its adoption. *Id.* at 799.

[¶ 26] "We construe statutes as a whole to give each provision meaning and effect." *Ash v. Traynor*, 2000 ND 75, ¶ 6, 609 N.W.2d 96. "The purpose of the Workers Compensation Act is to provide sure and certain relief for workers injured in their employment, and we construe the Act with the view of extending its benefit provisions to all who can fairly be brought within them." *Id.* at ¶ 8. "The Act is remedial, and we construe it to afford relief and to avoid forfeiture." *Id.*

[¶ 27] The interpretation of N.D.C.C. § 65–05–10(2) by WSI must be "reasonable." 6 Jacob A. Stein, et al., *Administrative Law* § 51.01[1], at 51–69 (2008). Whether WSI's interpretation of the statute is reasonable is based upon an examination of the legislation and its history. *Id.*

[¶ 28] The purpose of N.D.C.C. § 65–05–10(2) is to provide continued partial disability benefits to injured workers who fit the intent of the legislation. Section 65–05–10, N.D.C.C., was amended in 1991 to provide a five-year cap on partial disability benefits. 1991 N.D. Sess. Laws ch. 714, § 47(7). Two bills, S.B. 2246 and 2206, were introduced by the North Dakota Workers Compensation Bureau. Both bills provided for a cap on partial disability benefits after five years. Senate Bill 2246 was never adopted. Instead, the legislature adopted S.B. 2206.[1] Senate Bill 2206 was the legislature's attempt to significantly cut costs. *See* Hearing on S.B. 2246 Before the Joint Senate Judiciary and House Industry, Business and Labor, 55th N.D. Legis. Sess. (Feb. 4, 1991) (testimony of David L. Kemnitz). In 1991, the Bureau was projecting that employers would experience a forty percent increase in costs. *See* Hearing on S.B. 2246 Before the Joint Senate Judiciary and House Industry, Business and Labor, 55th N.D. Legis. Sess. (April 2–5, 1991, minutes). Senate Bill 2206 considered various proposals to cut costs, including ending partial disability claims after five years. *Id.*

---

1. Although S.B. 2206 was the version enacted by the legislature, much of the testimony and materials presented during the hearings of S.B. 2246 overlap with underlying considerations also impacting S.B. 2206.

Changing the entitlement to partial disability benefits to five years was estimated to save approximately $100,000. *See* Hearing on S.B. 2246 Before the Senate Judiciary, 55th N.D. Legis. Sess. (Feb. 4, 1991) (fiscal note). The overall estimated fiscal impact of S.B. 2206 was a savings of over $8 million and, therefore, the amendment to 65-05-10 was a small part of the bill and not much discussion can be found. *See id.* An exception to the five-year cap included in S.B. 2206 provided: "The bureau may waive the five-year limit on the duration of partial disability benefits in cases of catastrophic injury." 1991 N.D. Sess. Laws ch. 714, § 47(7). On February 4, 1991, Pat Mayer, the Assistant Claims and Rehabilitation Manager of the Workers Compensation Bureau testified in favor of S.B. 2246 before the Joint Senate Judiciary and House Industry, Business and Labor Committees. With regard to the purpose for the five-year cap on partial disability benefits, Mayer stated:

"Section 7. . . .

This section also seeks to limit the receipt of partial disability benefits to a period of five years, except in cases of catastrophic injury. *The vast majority of workers are able to recover their earnings capacity within that time frame.*

Hearing on S.B. 2246 Before the Senate Judiciary and House Industry, Business and Labor Comms., 55th N.D. Legis. Sess. (Feb. 4, 1991) (testimony of Pat Mayer, Assistant Claims and Rehabilitation Manager of the Workers Compensation Bureau) (emphasis added). The implication is that most injured workers who receive partial disability benefits would be earning at the same rate as they had when they were injured within five years and would no longer be entitled to partial disability benefits at that point anyway.

[¶ 29] In 1997, N.D.C.C. § 65-05-10(2) was amended by HB 1264, which was introduced by the Workers Compensation Bureau. 1997 N.D. Sess. Laws, ch. 542, § 5. Under the amendment, the Bureau was allowed to waive the five-year cap in a second circumstance "when the injured worker is working and has long-term restrictions verified by clear and convincing objective medical and vocational evidence that limits the injured worker to working less than twenty-eight hours per week because of the compensable work injury." On February 3, 1997, David L. Thiele, an attorney for the Workers Compensation Bureau, testified before the House Industry, Business and Labor committee in favor of HB 1264. Thiele testified: "Section 65-05-10(2) (page 8) allows the bureau to waive the five-year cap on partial disability benefits in cases where the injured worker has permanent restrictions to less than 28 hours per week." Hearing on HB 1264 Before the House Industry, Business and Labor Comm., 55th N.D. Legis. Sess. (Feb. 3, 1997) (testimony of David L. Thiele, attorney for the Workers Compensation Bureau). Thiele testified similarly before the Senate Industry, Business and Labor Committee on March 12, 1997. The Legislative Summary of HB 1264 states, in relevant part:

Currently an injured worker is limited to five years of partial disability benefits (excludes catastrophic)[.] The bill allows the bureau to waive the five year cap for those injured workers who have a permanent restriction to less than 28 hours work per week[.] *This will encourage such injured workers to continue to be productive working member [sic] of the community and will remove any negative incentive to not seek or obtain employment where there are restrictions in place limiting the hours the injured employee may work* [.] (Emphasis added.)

Hearing on HB 1264 Before the Senate Industry, Business and Labor Comm., 55th N.D. Legis. Sess. (March 12, 1997). The history of N.D.C.C. § 65–05–10(2) indicates that the legislation was intended to provide a mechanism for injured workers who had significant permanent work restrictions still in place after five years of partial disability benefits to continue to receive those benefits rather than having them quit working altogether. It is better for both the worker and society to have the injured worker working part time than not at all. The purpose of the 1997 amendment to N.D.C.C. § 65–05–10(2) was to benefit injured workers.

[¶ 30] Midthun was injured in 1999 but before the effective date of the 1999 amendments to N.D.C.C. § 65–05–10. Therefore, the version of N.D.C.C. § 65–05–10 in effect in 1997 is applicable. *See Rodenbiker v. Workforce Safety and Ins.,* 2007 ND 169, ¶ 16, 740 N.W.2d 831 (stating unless otherwise provided statutes in effect on the date of an injury govern WSI benefits).

[¶ 31] In order to receive partial disability benefits under N.D.C.C. § 65–05–10(2) (1997), an injured employee has to suffer a disability that resulted in a decrease of earning capacity. 1997 N.D. Sess. Laws ch. 542, § 5. The disability benefit is calculated at sixty-six and two-thirds percent of the difference between the injured employee's average weekly wages before the injury and the employee's wage earning capacity after the injury in the same or another employment. *Id.;* N.D.C.C. § 65–05–10 (1997). The amount of the partial disability benefit may not exceed the net pre-injury weekly wage. *Id.*

[¶ 32] "This Court has said that partial disability 'contemplates at least three factors: First, there should be a physical disability; second, the disability should be partial, or in other words, the employee should be able to work subject to the disability; and third, there should be an actual loss of earning capacity that is causally related to the disability.' " *Rodenbiker,* 2007 ND 169, ¶ 18, 740 N.W.2d 831 (quoting *Risch v. N.D. Workers Comp. Bureau,* 447 N.W.2d 308, 309 (N.D.1989)). An "employee's earnings capacity may be established by expert vocational evidence of a capacity to earn in the statewide job pool where the worker lives." N.D.C.C. § 65–05–10(3) (1997). "Actual postinjury earnings are presumptive evidence of earnings capacity where the job employs the employee to full work capacity in terms of hours worked per week, and where the job is in a field related to the employee's transferable skills." *Id.*

[¶ 33] Partial disability differs from total disability. Our Court has held: "Total disability exists when a worker is 'unable, solely because of his job-related injury, to perform or obtain any substantial amount of labor in his particular line of work, or in any other for which he would be fitted.' " *Rodenbiker,* 2007 ND 169, ¶ 18, 740 N.W.2d 831 (quoting *Jimison v. N.D. Workmen's Comp. Bureau,* 331 N.W.2d 822, 827 (N.D.1983)). Section 65–01–02(26) (1997), N.D.C.C., states:

"Permanent total disability" means an employee is determined incapable of rehabilitation of earnings capacity as determined by the:

a. Nature of injury.

b. Degree of physical impairment.

c. Education.

d. Work history.

e. Vocational rehabilitation potential.

As this Court has explained,

The purpose of partial disability benefits is to assist individuals who can be returned to substantial gainful employment through rehabilitation, but will ex-

perience a decrease in earnings capacity upon return to the workforce. Partial disability benefits are for individuals who can return to substantial gainful employment, but at a lesser amount of income; they are not for injured workers who merely have some capacity to work.

*Rodenbiker*, at ¶ 25 (citation omitted).

[¶ 34] At the hearing before the Administrative Law Judge, a staff attorney for WSI testified that from 1997 to approximately 2004, WSI generally interpreted N.D.C.C. § 65–05–10(2) such that the five-year cap on partial disability benefits did not apply to an injured worker if the injured worker could only work less than twenty-eight hours per week. The staff attorney testified that he recommended to the claims policy arm of WSI in 2003 that this was an incorrect interpretation of the statute. As a result of his recommendations, WSI changed its practice and now has one person track the five-year duration and, before the end of the five-year period, WSI holds a meeting with the staff attorney, the claims supervisor, the claims analyst, and if necessary, the head of claims and makes a determination with respect to waiver. The staff attorney testified that WSI has determined that the criteria to be used are based on the statutory criteria. He testified the criteria include,

[I]s there clear and convincing evidence below the 28 hours, is the injured worker remaining at work, and then finally whether or not the case has some sort of extraordinary circumstances involved with it, that means the waiver of the five year statute needs to take place in order that benefits be paid consistent with the intention on that statute.

He also testified that this is now the policy of WSI and will be in the policy manual when it is finalized. He acknowledged that the first two criteria track the statute. When asked what is meant by the third criterion, "extraordinary circumstances," he stated:

[T]here are a number of people out there that while being paid temporary partial disability benefits are being paid those benefits in such a manner that the reality of the situation is they would be *temporary and total* but for a doctor out there keeping them in the work force as a form of therapy. If that is the case, then to not waive the five years is to punish that *individual who in reality is a temporary total disability recipient.* (Emphasis added.)

[¶ 35] Although WSI claims it has interpreted N.D.C.C. § 65–05–10(2) consistent with the statute, it has not. Based on the record, WSI has interpreted the statute to require the injured worker to establish "total disability." The purpose of the statute is to benefit injured workers who are partially disabled. *Rodenbiker*, 2007 ND 169, ¶ 25, 740 N.W.2d 831. WSI's interpretation is inconsistent with the intent of the legislation and the purpose of chapter 65–05 to provide sure and certain relief to injured workers.

[¶ 36] Further WSI's interpretation of the statute is unreasonable and not the product of a rational mental process. The legislature did not authorize WSI to require proof of total disability in order for an injured worker to receive continuing partial disability benefits. WSI's interpretation of the statute clearly contradicts the intent of the legislation.

[¶ 37] The explanation by WSI of its abrupt change from applying the two criteria in the statute to adding a third criterion is "we screwed up." WSI has also applied its new interpretation of the statute with the third criterion retroactively. The staff attorney for WSI testified that after WSI's decision in 2003 or 2004 to

change its interpretation of the statute, it implemented in 2005 a sweep of its data to come up with a list of individuals who should have been under "the post 1991 statute." Those identified to which the five-year cap should have applied were offered, "to soften the blow," a stipulation for extended benefits for a period of time if they would agree to accept WSI's decision to end their benefits as final. I am of the opinion that retroactive application of WSI's new interpretation is an abuse of discretion.

[¶ 38] WSI's interpretation of N.D.C.C. § 65–05–10(2) is not in accordance with the law, and I would affirm the judgment of the district court dated April 14, 2008, reversing the final order of WSI dated July 20, 2007.

[¶ 39] Mary Muehlen Maring