# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 168

Gregory Beam,                                                                    Appellee

   v.

North Dakota Workforce Safety
and Insurance Fund,                                                              Appellant

   and

Gagnon, Inc.,                                                                    Respondent

## No. 20200067

Appeal from the District Court of Mercer County, South Central Judicial District, the Honorable Bruce A. Romanick, Judge.

REVERSED AND ADMINISTRATIVE LAW JUDGE'S DECISION REINSTATED.

Opinion of the Court by VandeWalle, Justice.

Stephen D. Little, Bismarck, ND, for appellee.

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, ND, for appellant.

**VandeWalle, Justice.**

[¶1]  North Dakota Workforce Safety and Insurance (WSI) appealed from a district court judgment reversing an administrative law judge's (ALJ) decision terminating Gregory Beam's benefits. We reverse the district court judgment and reinstate the ALJ's decision.

I

[¶2]  Beam was injured in 2016 while working for his employer, Gagnon, Inc. (Gagnon), installing sheets of metal. Beam applied for workers compensation benefits with WSI, and WSI accepted Beam's claim. At the time Beam applied for workers compensation benefits, Gagnon submitted a job description for machinist as Beam's position with the company at the time of his injuries.

[¶3]  In 2018, Beam completed a "Functional Capacity Evaluation." The evaluation identified Beam could occasionally climb ladders and kneel, but was unable to crouch or crawl. After completion of the evaluation, WSI identified Beam's transferable skills and physical capabilities. WSI determined Beam's pre-injury occupation was that of a sheet metal worker, not a machinist as submitted by Gagnon. WSI forwarded a list of job descriptions to Beam's treating physician, Dr. Kelly, for approval. The descriptions sent to Dr. Kelly were from the Dictionary of Occupational Titles (DOT). Included in the list of jobs were machinist and sheet metal worker. The machinist description read:

> Set up and operate a variety of machine tools to produce precision parts and instruments. Includes precision instrument makers who fabricate, modify, or repair mechanical instruments. May also fabricate and modify parts to make or repair machine tools or maintain industrial machines, applying knowledge of mechanics, shop mathematics, metal properties, layout, and machining procedures.

1

The description also stated the position required "[o]ccasional stooping, kneeling and crouching." The job description of a sheet metal worker as provided in the DOT read:

> Fabricate, assemble, install, and repair sheet metal products and equipment, such as ducts, control boxes, drainpipes, and furnace casings. Work may involve any of the following: setting up and operating fabricating machines to cut, bend, and straighten sheet metal; shaping metal over anvils, blocks, or forms using hammer; operating soldering and welding equipment to join sheet metal parts; or inspecting, assembling, and smoothing seams and joints of burred surfaces. Includes sheet metal duct installers who install prefabricated sheet metal ducts used for heating, air conditioning, or other purposes.

The description stated the physical requirements of a sheet metal worker were "[f]requent stooping, handling and reaching & occasional fingering." Dr. Kelly did not approve Beam returning to work as a machinist, stating, "I don't think the knee will tolerate the potential kneeling." Dr. Kelly did approve Beam returning to work as a sheet metal worker. Based on Dr. Kelly's approval for Beam to return to work as a sheet metal worker, WSI determined Beam could return to work in the same occupation, any employer, and discontinued Beam's benefits.

[¶4] After a hearing was held, an ALJ issued findings of fact and conclusions of law affirming WSI's termination of Beam's benefits. In finding of fact thirteen, the ALJ found the job description of a machinist as stated in the DOT did not match Beam's pre-injury profession. Rather, the ALJ found the preponderance of the evidence established Beam's "occupation was that of 'sheet metal worker', as defined in the DOT." The ALJ also found the occupation of sheet metal worker did not require kneeling or climbing ladders, and Beam possessed the necessary skills to perform the occupation of sheet metal worker. The ALJ found the preponderance of the evidence established Beam could return to the occupation of sheet metal worker, but could not return to his pre-injury position with Gagnon. The ALJ concluded WSI met its burden of proving Beam could return to the same occupation as a sheet metal worker with any employer.

2

[¶5] Beam appealed the ALJ's decision to the district court. On appeal to the district court, Beam argued the ALJ erred in relying on the DOT description of sheet metal worker contending the description did not include an accurate list of physical requirements of a sheet metal worker and the description had not been updated since 1988. In his specification of error, Beam did not list the ALJ's finding of fact thirteen that Beam was a sheet metal worker and not a machinist as error. The district court determined the ALJ's findings of fact were not supported by a preponderance of the evidence and reversed the ALJ's decision.

[¶6] On appeal, WSI argues the district court erred in reversing the ALJ's findings of fact and conclusions of law because the ALJ could reasonably conclude Beam could return to work as a sheet metal worker in a position other than his pre-injury position with Gagnon. WSI also argues the district court erred by considering the ALJ's finding of fact thirteen when the finding was not listed in Beam's specification of error.

II

[¶7] The Administrative Agencies Practice Act requires a party who appeals from an administrative hearing officer's decision to file a notice of appeal and specifications of error. N.D.C.C. § 28-32-42(4). A party appealing a hearing officer's decision must file "reasonably specific" specifications of error detailing which matters are at issue, so as to alert the agency, other parties, and the court of the particular errors claimed. *Midthun v. N.D. Workforce Safety & Ins.*, 2009 ND 22, ¶ 7, 761 N.W.2d 572. Boilerplate specifications of error which are general enough to apply to any administrative agency appeal are not tolerated by this Court, and are ripe for dismissal. *Id.* When a party does not enumerate an issue in their specifications of error, we will not consider the issue on appeal. *Id.*

[¶8] WSI argues that because Beam did not specify the ALJ's finding of fact thirteen as error, he could not challenge the DOT description of a sheet metal worker. A careful reading of finding of fact thirteen does not support WSI's argument.

[¶9] In finding of fact thirteen, the ALJ found:

> The job description for "machinist" provided by Gagnon, Inc. does not match what Mr. Beam said that he has done all of his career, including when working for Gagnon. Nor does the DOT description provided to Dr. Kelly by WSI. There is no evidence in the record that Mr. Beam was ever involved in producing precision parts and instruments. The preponderance of the evidence establishes that Mr. Beam's occupation was that of "sheet metal worker", as defined in the DOT.

[¶10] Finding thirteen does not discuss the physical requirements of either a machinist or sheet metal worker. The finding merely references the duties performed by a machinist and a sheet metal worker and states that the work duties Beam performed with Gagnon aligned more with those of a sheet metal worker than those of a machinist. This is best evidenced by the ALJ's statement that "[t]here is no evidence in the record that Mr. Beam was ever involved in producing precision parts and instruments." Finding thirteen simply concludes Beam's occupation was that of a sheet metal worker, based on the described job duties in the DOT, and not a machinist.

[¶11] On appeal, Beam has stated he was not a machinist with Gagnon, and agrees with finding of fact thirteen. Beam does not challenge the DOT description of the duties of a sheet metal worker. Beam does, however, challenge the physical requirements of a sheet metal worker as listed in the DOT. Yet, WSI argues that because Beam did not specify finding of fact thirteen in his specification of error, he cannot challenge the DOT description in any manner on appeal. Beam agrees with the job duties of a sheet metal worker as described in the DOT but disagrees with the physical requirements of a sheet metal worker as described in the DOT. WSI has offered no compelling argument why Beam cannot challenge the physical requirements of a sheet metal worker as listed in the DOT without challenging the entire DOT description.

[¶12] Furthermore, the district court did not rely on finding thirteen in reversing the ALJ's decision or conclude finding thirteen was not supported by the evidence. The district court referred to Beam as a sheet metal worker

4

throughout its order. The court's reversal of the ALJ's decision was based on its belief that the physical requirements of a sheet metal worker as described in the DOT were not supported by the evidence, not that Beam was not a sheet metal worker or the job duties of a sheet metal worker as described in the DOT were not supported by the evidence. By deciding not to challenge finding of fact thirteen—referencing the job duties of a machinist and sheet metal worker—in his specification of error, Beam did not waive his arguments challenging the ALJ's findings relating to the physical requirements of a sheet metal worker.

## III

[¶13] Courts exercise limited appellate review of decisions of an administrative agency under the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32. *Bishop v. N.D. Workforce Safety & Ins.*, 2012 ND 217, ¶ 5, 823 N.W.2d 257. Under N.D.C.C. §§ 28-32-46 and 28-32-49, the district court and this Court must affirm an order of an administrative agency unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46. On appeal from a district court order reviewing the decision of an ALJ, we review the decision of the ALJ and not that of the district court. *See* N.D.C.C. § 28-32-49.

5

[¶14] When reviewing an appeal from a final order issued by an independent ALJ, courts apply the same deferential standard of review to the ALJ's factual findings as used for agency decisions. *State ex rel. Workforce Safety & Ins. v. Questar Energy Servs., Inc.*, 2017 ND 241, ¶ 7, 902 N.W.2d 757; *Bishop*, 2012 ND 217, ¶ 6, 823 N.W.2d 257. Recognizing the ALJ had "the opportunity to observe witnesses and the 'responsibility to assess the credibility of witnesses and resolve conflicts in the evidence,'" in reviewing the ALJ's findings of fact we do not make independent findings or substitute our judgment for that of the ALJ; we determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Bishop*, at ¶ 6 (quoting *Workforce Safety & Ins. v. Auck*, 2010 ND 126, ¶ 9, 785 N.W.2d 186). We do not, however, give deference to an independent ALJ's legal conclusions, and questions of law are fully reviewable on appeal. *Id.*

[¶15] WSI argues the ALJ's finding that Beam was capable of performing the job of sheet metal worker identified in his vocational rehabilitation plan was supported by a preponderance of the evidence. Vocational rehabilitation for injured workers is governed by N.D.C.C. ch. 65-05.1, and the "goal of vocational rehabilitation [is] to return the disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs." N.D.C.C. § 65-05.1-01(3); *Bishop*, 2012 ND 217, ¶ 8, 823 N.W.2d 257. A rehabilitation plan is appropriate if it meets the requirements of N.D.C.C. ch. 65-05.1 and gives the injured worker a reasonable opportunity to obtain substantial gainful employment. *Bishop*, at ¶ 8. "A rehabilitation plan need not guarantee a claimant either a job or a predetermined weekly wage." *Welch v. Workforce Safety & Ins.*, 2017 ND 210, ¶ 15, 900 N.W.2d 822. WSI has the burden "to establish that a vocational rehabilitation plan is appropriate." *Bishop*, at ¶ 8 (quoting *Shotbolt v. N.D. Workforce Safety & Ins.*, 2010 ND 13, ¶ 20, 777 N.W.2d 853). "Under this Court's standard of review, WSI's selection of a vocational rehabilitation plan will not be reversed when there is 'evidence from which a reasoning mind could have reasonably concluded that the rehabilitation plan would return [the injured worker] to substantial gainful employment which was reasonably attainable in light of his injury and which

would substantially rehabilitate his earning capacity.'" *Id.* (quoting *Shotbolt*, at ¶ 21).

[¶16] The ALJ made the following findings of fact relating to the physical requirements of a sheet metal worker and Beam's ability to work as a sheet metal worker:

14. The preponderance of the evidence establishes that Dr. Kelly did not approve of Mr. Beam returning to an occupation that required kneeling or climbing ladders. Neither of those physical requirements are listed in the DOT definition of "sheet metal worker", and Dr. Kelly did approve of Mr. Beam returning to the position of "sheet metal worker" as defined by the DOT.
15. The preponderance of the evidence establishes that Mr. Beam possesses the skills to perform the occupation of "sheet metal worker" as defined in the DOT.
16. Although Mr. Beam credibly testified that many of his sheet metal jobs have required kneeling, the preponderance of the evidence establishes that "kneeling" is not a common requirement of the position of sheet metal worker, as defined in the DOT.
17. The preponderance of the evidence establishes that Mr. Beam is physically capable of returning to his pre-injury occupation of sheet metal worker, as defined in the DOT, although not with his employer at the time of injury because that particular position required too much kneeling.
18. The preponderance of the evidence establishes that the first appropriate vocational rehabilitation option for Mr. Beam is to return to the occupation of sheet metal worker, but not with Gagnon, Inc.

[¶17] After Beam completed a functional capacity evaluation, a list of DOT job descriptions was sent to Dr. Kelly for his approval of which jobs Beam could perform given his physical limitations. Both machinist and sheet metal worker were included in the list. Dr. Kelly did not approve Beam to return to work as a machinist, stating, "I don't think the knee will tolerate the potential kneeling." Dr. Kelly did approve Beam to return to work as a sheet metal worker. Finding of fact fourteen is supported by the evidence in the record.

7

[¶18] Beam testified he completed a five-year apprenticeship program in HVAC and architectural sheet metal work and had worked as a journeyman sheet metal installer for more than thirty years. Both HVAC and architectural sheet metal work were expressly described in the DOT sheet metal worker job description. Given Beam's extensive experience in the field, finding of fact fifteen is supported by the evidence in the record.

[¶19] Beam argues the ALJ's findings are not supported by the evidence in the record because the ALJ relied on the physical requirements of a sheet metal worker as stated in the DOT rather than relying on Beam's testimony of what the physical requirements of a sheet metal worker are based on Beam's experience. At the administrative hearing, Beam and Beam's vocational case manager, Zanthia Hagley Price, testified. Beam testified that the job he was performing at the time of his injury involved extensive climbing, and the type of work he performed prior to his injury generally involved extensive crawling, kneeling, squatting, and climbing. Beam testified he was required to perform those physical acts daily, and that he had not returned to work because he was limited in performing those physical acts due to his injuries.

[¶20] Price testified about WSI's determination that Beam could return to the same occupation, any employer. In making its determination, WSI considered the information provided in the DOT and the standard occupational classification. Combining the information provided in these two sources, WSI determined Beam could return to work as a sheet metal worker because the DOT did not list kneeling as one of the physical requirements of a sheet metal worker. Price testified that although Beam may not have been able to return to work in his prior position with Gagnon, Beam had transferrable skills that would allow him to work as a sheet metal worker in a different job that required less kneeling.

[¶21] The ALJ considered Beam's testimony, Price's testimony, and the physical requirements of a sheet metal worker as listed in the DOT. After considering the evidence, the ALJ determined Beam could return to work as a sheet metal worker in a position that did not require the extensive amount of kneeling Beam was required to perform in his pre-injury position with Gagnon.

The ALJ found kneeling was not a common requirement of a sheet metal worker based on the DOT definition. Beam contends the ALJ's reliance on the DOT definition is misplaced because it was last updated in 1988 and Beam's testimony indicated kneeling was a regular requirement of a sheet metal worker. Although Beam's credible testimony indicated his pre-injury position required kneeling, Beam did not testify that all sheet metal worker jobs require kneeling. Nor did Beam testify how the physical requirements of a sheet metal worker had changed since 1988. The ALJ did not err in relying on the DOT description in determining Beam could return to work as a sheet metal worker in a position other that his pre-injury position with Gagnon. Findings of fact sixteen, seventeen, and eighteen are supported by the evidence in the record.

[¶22] We defer to the ALJ to resolve conflicts in the evidence. Beam may not be able to work in the same capacity as he was prior to his injury with Gagnon, but WSI's rehabilitation plan need not guarantee Beam a job; it must only provide Beam a reasonable opportunity to return to substantial gainful employment reasonably attainable in light of Beam's injury. Applying our deferential standard of review, we conclude there is evidence in the record from which a reasoning mind could have reasonably concluded WSI's rehabilitation plan would return Beam to substantial gainful employment.

IV

[¶23] We reverse the district court judgment and reinstate the ALJ's decision.

[¶24] Gerald W. VandeWalle
    Jerod E. Tufte
    Daniel J. Crothers
    Lisa Fair McEvers
    Jon J. Jensen, C.J.