# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 3

Brendel Construction, Inc.,           Appellant and Cross-Appellee

     v.

North Dakota Workforce

Safety & Insurance,           Appellee and Cross-Appellant

## No. 20200161

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Pamela A. Nesvig, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Jensen, Chief Justice, in which Justices McEvers and Tufte joined. Justice Crothers filed an opinion concurring in part and dissenting in part, in which Justice VandeWalle joined.

Lawrence E. King (argued) and Alyssa L. Lovas (on brief), Bismarck, ND, for appellant and cross-appellee.

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, ND for appellee and cross-appellant.

**Jensen, Chief Justice.**

[¶1]   Brendel Construction appeals from a district court judgment affirming an administrative law judge's (ALJ) decision to hold Brendel Construction liable for unpaid workers compensation premiums and penalties attributed to a subcontractor's account and determining Randy Brendel was personally liable for unpaid workers compensation premiums. North Dakota Workforce Safety and Insurance (WSI) cross-appeals the district court's order dismissing WSI's cross-appeal from the decision of the ALJ as untimely filed.  We affirm the imposition of liability against Brendel Construction for unpaid workers compensation premiums and penalties, and affirm the imposition of liability against Randy Brendel. We reverse and remand the dismissal of WSI's cross-appeal as untimely filed.

I

[¶2]   In August 2017, WSI identified Brendel Construction as the general contractor for a roofing project in Bismarck where crew members were reported to be working without fall protection. WSI's investigation of the report regarding the lack of fall protection expanded into an investigation of workers compensation coverage. WSI ultimately concluded that two of Brendel Construction's subcontractors, Alfredo Frias and Daniel Alvidrez, were uninsured and not providing North Dakota workers compensation coverage for their employees. WSI requested, but did not receive, information from Brendel Construction regarding the subcontractors' income.

[¶3]   WSI sent Alvidrez and Frias Notices of Decision by regular mail which identified them as employers who required insurance coverage in North Dakota. WSI also sent Brendel Construction and Randy Brendel the Notice of Decision regarding both subcontractors. The subcontractors did not respond to the notices. In the absence of information to confirm the subcontractors' income, WSI calculated the premiums due from Alvidrez and Frias using the wage cap method provided in N.D.C.C. § 65-04-19(3). Because WSI was unable

to secure service of the required pleadings on the subcontractors, WSI's collection actions against the subcontractors were unsuccessful.

## II

[¶4] In August 2018, WSI issued an administrative order assessing the liability of Brendel Construction and Randy Brendel, personally, for the unpaid premiums and penalties assessed against Alvidrez and Frias. On October 17, 2019, following an administrative hearing, an ALJ determined the following: it affirmed WSI's decision holding Brendel Construction liable as a general contractor for Frias' unpaid premiums and ordered payment of $44,574.40; it affirmed WSI's decision to hold Randy Brendel personally liable for the unpaid workers compensation premiums; and it reversed WSI's decision holding Brendel Construction liable for Alvidrez's unpaid premiums.

[¶5] Brendel Construction filed a petition for reconsideration of the ALJ's decision to impose liability on Brendel Construction for Frias' unpaid premiums and the amount of the premiums. Additionally, in the event the imposition of liability against Brendel Construction was appropriate, Brendel Construction requested reconsideration of the imposition of personal liability against Randy Brendel. WSI did not file a petition for reconsideration of the decision rejecting the imposition of liability for Alvidrez. The ALJ denied the petition for reconsideration on November 19, 2019.

[¶6] Brendel Construction appealed the ALJ's determination of liability for Frias' premiums to the district court. WSI cross-appealed the ALJ's decision to not hold Brendel Construction liable for Alvidrez's premiums.

[¶7] WSI's cross-appeal was filed more than thirty days after the ALJ's October 17, 2019 decision, but within thirty days of the ALJ's November 19, 2019 decision denying Brendel Construction's request for reconsideration. Brendel Construction moved to dismiss WSI's cross-appeal asserting it was untimely because, in the absence of a request for reconsideration, WSI's appeal was required to be filed within thirty days after the ALJ's October 17, 2019 decision. The court dismissed WSI's cross-appeal as being untimely.

[¶8] The district court affirmed the ALJ's decision holding Brendel Construction liable for Frias' unpaid workers compensation premiums and WSI's calculation of premiums and penalties. The court also affirmed the imposition of liability against Randy Brendel.

[¶9] On appeal, Brendel Construction argues the imposition of liability for Frias' unpaid premiums and penalties on Brendel Construction and Randy Brendel is erroneous and the method used by WSI to calculate the premiums is a misapplication of the law. On cross-appeal, WSI argues the court erred in dismissing its cross-appeal on the basis the appeal was untimely filed.

III

[¶10] Our limited review of a decision of an administrative agency is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32. *Bishop v. N.D. Workforce Safety & Ins.*, 2012 ND 217, ¶ 5, 823 N.W.2d 257. This Court reviews the decision of the ALJ and not that of the district court. *Beam v. N.D. Workforce Safety & Ins. Fund*, 2020 ND 168, ¶ 13, 946 N.W.2d 486; *see also* N.D.C.C. § 28-32-49. This Court must affirm an order of an administrative agency unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

3

N.D.C.C §§ 28-32-46 and 28-32-49.

[¶11] This Court has stated:

> When reviewing an appeal from a final order issued by an independent ALJ, courts apply the same deferential standard of review to the ALJ's factual findings as used for agency decisions. Recognizing the ALJ had the opportunity to observe witnesses and the responsibility to assess the credibility of witnesses and resolve conflicts in the evidence, in reviewing the ALJ's findings of fact we do not make independent findings or substitute our judgment for that of the ALJ; we determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. We do not, however, give deference to an independent ALJ's legal conclusions, and questions of law are fully reviewable on appeal.

*Beam*, 2020 ND 168, ¶ 14, 946 N.W.2d 486 (internal citations and quotations omitted).

IV

[¶12] Individuals employed by a subcontractor may be deemed to be the employees of a general contractor, and the general contractor may be held liable for any unpaid premiums and penalties associated with the subcontractor's failure to secure insurance coverage for those employees. N.D.C.C. § 65-04-26.2(1). Brendel Construction challenges the ALJ's findings of fact that Frias was a subcontractor of Brendel Construction; the employees of Frias could be deemed to be employees of Brendel Construction; and the resulting imposition of liability against Brendel Construction for unpaid premiums and penalties determined to be owed by Frias.

[¶13] As findings of fact, we review the record to determine whether those findings are supported by a preponderance of the evidence. In reviewing the findings, we consider whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record.

4

[¶14] Based on our review of the record in this case, WSI presented evidence that Randy Brendel did not deny knowing Frias during a telephone conversation with a WSI representative. There were Occupational Safety and Health Administration ("OSHA") reports which referenced Frias as Brendel Construction's subcontractor. Randy Brendel sent information to OSHA regarding Frias in October 2016, and OSHA documents confirmed Brendel Construction was the general contractor and Frias was a subcontractor on the same job.

[¶15] In April 2017, OSHA inspected a worksite in Bismarck. OSHA records showed Frias obtained the bid on the project through Brendel Construction, and Randy Brendel admitted that particular project was subcontracted. In a second OSHA inspection report, Frias was identified as the employer on the construction site located on 35th Street in Bismarck, North Dakota, with the notation that "[t]he owner, Alfredo Frias, obtained the bid on the project through Brendel Construction."

[¶16] Brendel Construction argues that there is a lack of evidence showing an employer-employee relationship with Frias because there are no checks payable to Frias by Brendel Construction. However, OSHA documents show Brendel Construction used a "pay-by-cash" system with Frias which explains the lack of documentation.

[¶17] A reasoning mind reasonably could have determined Frias was a subcontractor for Brendel Construction. We conclude the finding that Brendel Construction was liable for the unpaid premiums and penalties related to employees of Frias was proven by the weight of the evidence from the entire record.

V

[¶18] Brendel Construction argues there is no evidence that Frias was properly served with WSI's Notice of Decision and the action against Frias is not final. Frias asserts the lack of finality in the underlying action prevents a derivative action against Brendel Construction and Randy Brendel. The ALJ determined N.D.C.C. § 65-04-26.2, which imposes liability on general

5

contractors for unpaid premiums of subcontractors, does not require an underlying action to assess liability on the subcontractor to be final before the liability is assessed against the contractor.

[¶19] Interpretation of a statute is a question of law, fully reviewable on appeal from an administrative decision. *Midthun v. N.D. Workforce Safety Ins.*, 2009 ND 22, ¶ 9, 761 N.W.2d 572. When construing a statute, this Court first looks to the words used in the statute, giving them their plain, ordinary, and commonly understood meaning. N.D.C.C. § 1-02-02. "This Court's primary objective is to ascertain the Legislature's intent." *Midthun*, at ¶ 10 (citing *Lee v. N.D. Workers Comp. Bureau*, 1998 ND 218, ¶ 11, 587 N.W.2d 423).

[¶20] Section 65-04-26.2(1), N.D.C.C, states:

> An individual employed by a subcontractor or by an independent contractor operating under an agreement with a general contractor is deemed to be an employee of the general contractor and any subcontractor that supplied work to the subcontractor or independent contractor. A general contractor and a subcontractor are liable for payment of premium and any applicable penalty for an employee of a subcontractor or independent contractor that does not secure required coverage or pay the premium owing. The general contractor and a subcontractor are liable for payment of this premium and penalty until the subcontractor or independent contractor pays this premium and penalty. The liability imposed on a general contractor and a subcontractor under this section for the payment of premium and penalties under this title which are not paid by a subcontractor or independent contractor is limited to work performed under that general contractor.

[¶21] The plain language of N.D.C.C. § 65-04-26.2(1) allows an agency to seek payment of premiums and penalties from both general contractors and subcontractors. Additionally, the statute holds general contractors liable for payment of premiums and penalties until the subcontractor pays. There is no explicit requirement that the underlying action against the subcontractor be final. This Court interprets the words provided by the legislature, and not what has been left unsaid. *See Hughes v. Olheiser Masonry, Inc.*, 2019 ND 273, ¶ 8, 935 N.W.2d 530 (noting the law is what is said, and not what is unsaid). The

6

ALJ did not err in determining that N.D.C.C. § 65-04-26.2(1) allows for the imposition of derivative liability against a general contractor without proof the underling assessment of liability against the subcontractor is final.

## VI

[¶22] Brendel Construction argues WSI inappropriately used the wage cap to calculate the amount of the late premiums. Brendel Construction contends N.D.C.C. § 65-04-26.2(3) limits WSI, in calculating the derivative general contractor liability, to using "the available payroll information of the subcontractor or independent contractor for work performed under the liable general contractor or a subcontractor as permitted in section 65-04-19." Brendel Construction concedes the use of the wage cap in effect per employee reported in the previous payroll report to calculate the amount of the late premiums is authorized by N.D.C.C. § 65-04-19, but contends that method of calculation is precluded by the limiting language in N.D.C.C. § 65-04-26.2(3).

[¶23] This Court has recognized that statutory language must be interpreted in context, with the goal of giving meaning and effect to every word, phrase, and sentence. *Indus. Contractors, Inc. v. Taylor,* 2017 ND 183, ¶ 11, 899 N.W.2d 680; N.D.C.C. §§ 1-02-03 and 1-02-38(2). "We construe statutes to give effect to all of their provisions so that no part of the statute is rendered inoperative or superfluous." *Indus. Contractors, Inc.,* 2017 ND 183, at ¶ 11; N.D.C.C. § 1-02-38(2) and (4).

[¶24] The interpretation of N.D.C.C. § 65-04-26.2(3) advanced by Brendel Construction would render the reference to N.D.C.C. § 65-04-19 inoperative or superfluous. The legislature's specific reference to N.D.C.C. § 65-04-19 is a clear expression of its intent to allow WSI to calculate the premiums due utilizing one of the methods allowed under that statute, including using the wage cap in effect per employee reported in the previous payroll report to calculate the amount of the late premiums. We conclude, in the absence of adequate payroll records being provided by Brendel Construction, WSI appropriately applied the wage cap in effect per employee reported in the previous payroll report to calculate the amount of the late premiums.

## VII

[¶25] WSI cross-appeals the determination that the district court lacked subject matter jurisdiction to consider its challenge to the ALJ's decision. Brendel Construction petitioned the ALJ for reconsideration of the ALJ's initial decision. WSI did not petition for reconsideration and did not immediately file a notice of appeal to the court. WSI agrees its notice of appeal to the court was not filed within thirty days of the ALJ's initial decision, and WSI agrees it did not petition for reconsideration of the ALJ's decision. WSI, within thirty days of the ALJ deciding Brendel Construction's petition for reconsideration, filed a notice of appeal with the court.

[¶26] The district court determined it lacked jurisdiction to decide WSI's appeal from the ALJ's initial decision because WSI filed its appeal more than thirty days after the initial decision was issued. We are asked to decide whether the use of the words "the party" in N.D.C.C. § 28-32-39(1) limits the extended time for filing an appeal following a petition for reconsideration to only parties petitioning for reconsideration, or if the extended time for appeal applies to all parties.

[¶27] An appeal to a district court from a post-hearing administrative order is governed by N.D.C.C. ch. 65-10 and N.D.C.C. ch. 28-32. N.D.C.C. §§ 65-01-16(9) and 65-10-01. Section 28-32-42, N.D.C.C., provides for the manner of appeal, and the relevant language states:

> 1. Any party to any proceeding heard by an administrative agency, except when the order of the administrative agency is declared final by any other statute, may appeal from the order within thirty days after notice of the order has been given as required by section 28-32-39. If a reconsideration has been requested as provided in section 28-32-40, the party may appeal within thirty days after notice of the final determination upon reconsideration has been given as required by sections 28-32-39 and 28-32-40. If an agency does not dispose of a petition for reconsideration within thirty days after the filing of the petition, the agency is deemed to have made a final determination upon which an appeal may be taken.

8

[¶28] This Court has held that in order to invoke our appellate jurisdiction, a timely notice of appeal must be filed. *Lang v. Bank of N.D.*, 377 N.W.2d 575, 579 (N.D. 1985). The right to appeal is statutory, and the legislature controls the right to appeal. *First Tr. Co. of N.D. v. Conway*, 345 N.W.2d 838, 840 (N.D. 1984). The party who attempts to appeal is required to show the right to the appeal is provided within the specific statute. *Id.* "If a timely notice of appeal is not filed, a lower court's decision is a final determination which may be modified only in rare circumstances and for compelling policy reasons." *Lang*, at 579. "Failure to satisfy the statutory requirements for initiating an appeal to the district court from an administrative decision prevents the district court from obtaining subject matter jurisdiction over the appeal." *Ellis v. N.D. Workforce Safety & Ins.*, 2020 ND 14, ¶ 7, 937 N.W.2d 513. "When jurisdictional facts are not disputed, the issue of subject matter jurisdiction is a question of law, which we review de novo." *In re Estate of Vaage*, 2016 ND 32, ¶ 14, 875 N.W.2d 527.

[¶29] Subdivision (1) of N.D.C.C. § 28-32-42 (previously codified under N.D.C.C. § 28-32-15) sets forth the procedure of taking appeals to the district court. *See Lende v. N.D. Workers' Comp. Bureau*, 1997 ND 178, ¶ 30, 568 N.W.2d 755; N.D.C.C. § 65-10-01. First, where the final order is issued, an appeal can be taken "within thirty days after notice of the order has been given as required by section 28-32-39." Second, if a reconsideration has been requested, an appeal can be taken "within thirty days after notice of the final determination upon reconsideration has been given as required by sections 28-32-39 and 28-32-40." Third, "[i]f an agency does not dispose of a petition for reconsideration within thirty days after the filing of the petition," the order becomes a final order from which an appeal can be taken.

[¶30] The interpretation of a statute is a question of law, which is fully reviewable on appeal. *Wilkens v. Westby*, 2019 ND 186, ¶ 6, 931 N.W.2d 229. In interpreting statutes, this Court has said:

> Our primary goal in statutory construction is to ascertain the intent of the legislature, and we first look to the plain language of the statute and give each word of the statute its ordinary meaning. When the wording of a statute is clear and free of all ambiguity,

9

the letter of it is not to be disregarded under the pretext of pursuing its spirit. If, however, the statute is ambiguous or if adherence to the strict letter of the statute would lead to an absurd or ludicrous result, a court may resort to extrinsic aids, such as legislative history, to interpret the statute. A statute is ambiguous if it is susceptible to meanings that are different, but rational. We presume the legislature did not intend an absurd or ludicrous result or unjust consequences, and we construe statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted.

*PHI Fin. Servs., Inc. v. Johnston Law Office, P.C.*, 2020 ND 22, ¶ 10, 937 N.W.2d 885 (quoting *State v. G.C.H.*, 2019 ND 256, ¶ 13, 934 N.W.2d 857).

[¶31] In order to have standing to appeal from an administrative agency's decision, a party must be factually aggrieved by the final order. *See In re Juran & Moody, Inc.*, 2000 ND 136, ¶ 17, 613 N.W.2d 503 (noting a person has standing to appeal from an agency decision if  the person: (1) participates in the proceedings before an administrative agency, (2) is directly interested in the proceedings, and (3) is factually aggrieved by the agency's final order). Here, the final order issued by the ALJ was the denial of Brendel's request for reconsideration and affirmation of the prior order.

[¶32] An interpretation of "the party" in subdivision (1) of N.D.C.C. § 28-32-42 as referring back to the unstated subject of the passive "reconsideration has been requested," would limit the right to appeal the ALJ's decision following a motion to reconsider to only the party requesting reconsideration would lead to an absurd or ludicrous result or unjust consequences in virtually every instance in which the party seeking reconsideration prevailed on some or all of the issues raised in the motion for reconsideration. For example, had the initial decision in this case been issued entirely in favor of WSI, WSI would have had no reason to appeal or file a request for reconsideration. Not only would WSI lack a reason to appeal, WSI could not have filed a specification of error as required by N.D.C.C. § 28-32-42 to properly initiate an appeal. Had the ALJ subsequently determined its initial opinion was incorrect, and reversed its decision to rule in favor of Brendel Construction on some or even all of the issues, this reading of "the party" would prevent WSI from appealing the

reconsidered decision to the district court. Any party obtaining a favorable initial ALJ decision would be placed in a position in which it would have neither a reason to initiate an appeal or reconsideration nor the ability to comply with the specification of error required to initiate an appeal. Additionally, in the event the ALJ were to issue an adverse ruling following the opposing party's request for reconsideration, no ability to appeal that adverse ruling.

[¶33] We presume the legislature did not intend the absurd or ludicrous result, or unjust consequence, of denying an initially prevailing party an opportunity to appeal in the event a request for reconsideration results in a subsequently adverse ruling. We construe statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted. Here, we interpret "the party" in subdivision (1) of N.D.C.C. § 28-32-42 as a reference back to the first sentence "[a]ny party . . . may appeal," which means it sets the times for appeal for both parties as thirty days from the date of the ALJ decision if no petition for reconsideration is timely filed, thirty days after a decision on a petition for reconsideration if a petition is timely filed, or thirty days after the timely filing of a petition for reconsideration if no decision has been issued on the petition. WSI timely appealed within thirty days of the decision on the petition for reconsideration. We reverse and remand this case to the court for consideration of WSI's appeal.

## VIII

[¶34] We affirm the imposition of liability against Brendel Construction for unpaid workers compensation premiums and penalties, and affirm the imposition of liability against Randy Brendel. We reverse the dismissal of WSI's cross-appeal as untimely filed and remand this case to the court for consideration of the WSI appeal.

[¶35] Jon J. Jensen, C.J.
Lisa Fair McEvers
Jerod E. Tufte

11

**Crothers, Justice, concurring in part and dissenting in part.**

[¶36] I agree with the majority opinion affirming the issues raised on appeal, but respectfully dissent from that part granting relief on the cross-appeal. I would affirm the district court's dismissal of WSI's appeal based on the plain wording of N.D.C.C. § 28-32-42(1).

[¶37] WSI's cross-appeal is resolved by statutory construction. The majority intones the applicable rule of statutory construction. Majority opinion, ¶ 30. But the majority then fails to follow the "plain meaning" portion of our rule in favor of their perception of absurdity, ludicrousness, and an "unjust consequence." *Id.* at ¶ 33. I would apply the statute according to its plain terms, which I disagree leads to an absurd, ludicrous or unjust result. But even if an untoward result is possible under some other set of facts, the better course in this case would be for us to abide by the plain language of the statute and let the legislature determine whether it thinks our interpretation of what we say they said is absurd, ludicrous or unjust. *See Olson v. Workforce Safety and Ins.,* 2008 ND 59, ¶ 23, 747 N.W.2d 71 ("It is for the legislature, not the courts, to amend a statute if the plain language of the statute does not accurately reflect the legislature's intent.").

[¶38] The plain words of the statute are not ambiguous. The first sentence of N.D.C.C. § 28-32-42(1) says "[a]ny party" may appeal within 30 days. Neither the majority nor the parties suggest this limitation is unclear. Therefore, WSI was required to appeal within 30 days of the ALJ's initial order absent the tolling provision of the second sentence caused by a motion for reconsideration.

[¶39] The second sentence in N.D.C.C. § 28-32-42(1) states, "If a reconsideration has been requested as provided in section 28-32-40, *the party* may appeal within thirty days after notice of the final determination upon reconsideration has been given. . . ." (emphasis added). According to common use and accepted understanding, the definite article "the" in this sentence relates to "a person or thing that is identified or specified." *Merriam-Webster.com Dictionary*, s.v. "definite article," accessed December 15, 2020, https://www.merriam-webster.com/dictionary/definite%20article; N.D.C.C.

§ 1-02-03 ("Words and phrases must be construed according to the context and the rules of grammar and the approved usage of the language.").

[¶40] Here, the definite article "the" in the phrase "the party" refers to the person already identified or specified. Although implicit in this particular sentence, that reference only can be to the party who sought reconsideration. Therefore, the legislative choice of "the" over "a" or "any" in the second sentence extends the time for appeal only for "the" party moving to reconsider the ALJ's original decision. WSI was not that party.

[¶41] Section 1-02-03, N.D.C.C., requires that "[w]ords and phrases must be construed according to the context and the rules of grammar and the approved usage of the language." Instead of following this rule, the majority concluded "the party" in the second sentence is a reference back to "any party" in the first sentence. Majority opinion, ¶ 32. However, that interpretation ignores the grammatical structure of the second sentence which includes the passive phrase "If a reconsideration has been requested . . . ." N.D.C.C. § 28-32-42(1).

[¶42] Reconsideration of an ALJ's order is not spontaneous or self-generating. It requires action by a party. In the context of the second sentence, the question for us is which party to the proceeding sought reconsideration. The record establishes that party was Brendel. Therefore, Brendel was "the party" whose appeal was extended by the motion for reconsideration. Rather than accepting this construction of the second sentence, the majority glues the first two sentences together and adopts a meaning that effectively provides that "any appeal may be taken within thirty days after notice of the final determination upon reconsideration has been given. . . ." But that clearly is not what the second sentence says.

[¶43] I also disagree the plain meaning of N.D.C.C. § 28-32-42(1) leads to an absurd, ludicrous or unjust result in this case. Rather, it leads to a result that required WSI either to move for reconsideration of the ALJ's adverse decision or to take a timely appeal from that decision. However, instead of explaining how requiring WSI to take a timely appeal in this case is absurd, ludicrous or unjust, the majority develops a hypothetical situation where WSI would not

13

have a reason to appeal until after the ALJ rules on the other party's motion for reconsideration. Majority opinion, ¶ 32.

[¶44] I agree the majority's hypothetical could make sensible application of the statute problematic. However, we are bound to decide this case based on the facts that exist, and not those which are the product of a fertile imagination. *See State v. Orr*, Conn. 969 A.2d 750 n.22 (Conn. 2009) (First, we emphasize that "[t]he process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case. . . ." "[The statute at issue], which specifically directs our attention to the actual text of the statute and its relationship to other statutes, does not permit statutory interpretation to be influenced by hypotheticals.") (citations omitted); *Nabisco, Inc. v. Transport Indemnity Co.*, 143 Cal.App.3d 831, 835 (Cal. Ct. App. 1983) ("Nabisco's resort to hypothetical hyperbole (the 'mom and pop' grocery store argument) to conjure up an ambiguity in the Transport policy similarly fails. Ambiguity in an insurance policy, if it exists, must be found in the circumstances of the particular case; it may not be created in the abstract.") (citation omitted).

[¶45] Here, the actual facts do not present an ambiguity; nor do they prevent application of the statute's plain meaning. WSI was aggrieved by the ALJ's original decision. It could have requested reconsideration but did not. As a result, WSI was bound by the requirement in N.D.C.C. § 28-32-42(1) that an appeal be taken within 30 days of the ALJ's order. Thus, instead of providing facts giving us a reason to reach a result like the majority, their hypothetical instead merely gives WSI a reason to ask the legislature to modify a law that might someday cause a problem.

[¶46] Daniel J. Crothers
Gerald W. VandeWalle

14