# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2022 ND 10

Brendel Construction, Inc.,                                                    Appellee

v.

North Dakota Workforce Safety & Insurance,                    Appellant

### No. 20210229

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Pamela A. Nesvig, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Lawrence E. King (argued) and Lexie K. Bergstrom (appeared), Bismarck, ND, for appellee.

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, ND, for appellant.

**McEvers, Justice.**

[¶1]   North Dakota Workforce Safety & Insurance appeals from a judgment entered after the district court affirmed an ALJ's decision reversing WSI's imposition of derivative premium liability on Brendel Construction, Inc. for unpaid premiums due from one of its subcontractors, Daniel Alvidrez.  We affirm.

I

[¶2]   We previously decided an appeal in this case in *Brendel Construction, Inc. v. North Dakota Workforce Safety & Insurance*, 2021 ND 3, 953 N.W.2d 612.  Our decision in *Brendel Construction I* set forth the facts of the case, which we repeat here only to the extent necessary to decide the present appeal.

[¶3]  WSI determined Daniel Alvidrez and Alfredo Frias were roofing subcontractors of Brendel Construction.  WSI investigators noticed Frias and Alvidrez each used the same Texas address, and because of this "cross-over information relating to Frias and Alvidrez, [WSI] established two separate accounts."  After unsuccessfully attempting to collect premium amounts from each, WSI imposed derivative liability on Brendel Construction.  WSI's liability calculation for the Frias account was based on reports WSI obtained from the Occupational Safety and Health Administration that listed various individuals as Frias' employees.  WSI's calculation for the Alvidrez account was based on Alvidrez's 1099 and amounts Brendel Construction paid Alvidrez via check.  The checks corresponded with amounts listed on documents WSI describes as "invoices," which contain handwritten notations describing the size and addresses of various projects.

[¶4]   An ALJ affirmed WSI's imposition of liability on Brendel Construction for the Frias account.  The ALJ reversed WSI's liability determination for the Alvidrez account finding the evidence did not establish the number of employees Alvidrez hired or the amount of wages he may have paid even if he had employees.  Brendel Construction appealed to the district court, and WSI

cross appealed. The court affirmed imposition of liability as to the Frias account and dismissed as untimely WSI's cross appeal concerning the Alvidrez account. In *Brendel Construction I,* we affirmed as to the Frias account and reversed the dismissal of WSI's cross appeal. On remand, the district court affirmed the ALJ's decision determining Brendel Construction was not liable for the Alvidrez account. WSI appeals from the judgment.

## II

[¶5] We exercise appellate review of a final order issued by an administrative agency under the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32. *Workforce Safety & Ins. v. Sandberg*, 2021 ND 39, ¶ 9, 956 N.W.2d 342. Under N.D.C.C. § 28-32-49, we review the agency's order in the same manner as the district court and must affirm unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46. We apply the following standard when examining factual findings and legal conclusions in administrative appeals:

When reviewing an appeal from a final order issued by an independent ALJ, courts apply the same deferential standard of

2

review to the ALJ's factual findings as used for agency decisions. Recognizing the ALJ had the opportunity to observe witnesses and the responsibility to assess the credibility of witnesses and resolve conflicts in the evidence, in reviewing the ALJ's findings of fact we do not make independent findings or substitute our judgment for that of the ALJ; we determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. We do not, however, give deference to an independent ALJ's legal conclusions, and questions of law are fully reviewable on appeal.

*Brendel Constr. I*, 2021 ND 3, ¶ 11 (quoting *Beam v. N.D. Workforce Safety & Ins. Fund*, 2020 ND 168, ¶ 14, 946 N.W.2d 486).

III

[¶6] WSI claims the ALJ erred when it reversed its liability determination as to the Alvidrez account. WSI argues employers may not evade liability by flouting compliance with the law and providing inaccurate information or no information at all. WSI asserts its calculation was permissible under N.D.C.C. § 65-04-19(3) because it was based on "the best available information" it could obtain through its investigative process.

[¶7] Under N.D.C.C. § 65-04-26.2(1), employees of a subcontractor may be deemed employees of a general contractor for purposes of determining unpaid workforce insurance premiums and penalties. Section 65-04-19(3), N.D.C.C., applies when WSI lacks information from an employer:

If the organization does not receive the payroll report or, in the case of a noncompliant employer, the organization does not receive reliable and accurate payroll information, the organization may calculate premium using the wage cap in effect per employee reported in the previous payroll report, using information obtained through the organization's investigative process, or using data obtained from job service North Dakota.

[¶8] In this case, WSI used the wage cap to attribute a number of employees to the Alvidrez account based on the payments from Brendel Construction to Alvidrez. The ALJ explained WSI's methodology:

3

For 2016, [WSI] attributed nine employees and one prorated employee to Alvidrez's account. [WSI] calculated this by dividing $346,192.00, the amount Brendel paid to Alvidrez according to the 1099, by the wage cap amount of $35,600. The 2016 premium was calculated by multiplying $346,192 times 8.13%, the premium rate at the applicable rate class, resulting in a premium of $28,145.41 for the year 2016. WSI also assessed a noncompliance penalty of $8,443.62. For 2017, [WSI] prorated the premium amount for the period of January 1, 2017 to December 5, 2017. [WSI] also prorated $310,950, the amount Brendel paid Alvidrez according to the 1099, and a prorated wage cap amount of $34,550, resulting in nine employees being attributed to Alviderz's account. The 2017 premium was calculated by multiplying $310,950, times 7.39%, the premium rate for the applicable rate class, resulting in a premium of $22,979.21. WSI also assessed a noncompliance penalty of $5,744.80.

The ALJ reversed WSI's premium liability determination explaining:

> The greater weight of the evidence does not support a finding that Brendel is liable for the unpaid premiums attributed to the Alvidrez account. Brendel admits he hired Alvidrez and there is evidence that Alvidrez was paid by Brendel. However, there is no evidence to establish how many "individuals," or employees, were working for Alvidrez. There is also no evidence that Alvidrez and Frias had separate crews working at the job sites identified in the OSHA reports. The only evidence regarding the number of employees or their identities, working for Alvidrez and Frias is the OSHA reports. Those employees have been attributed to the Frias account. Absent evidence there were other employees working for Alvidrez at those job sites, Brendel should not be liable for the unpaid premiums attributed to the Alvidrez account.

[¶9] WSI claims it would have been impossible for Alvidrez to have completed the projects Brendel paid him for on his own, and he should not be able to "escape liability for premiums due because the precise number of employees could not be determined." WSI argues the ALJ misapplied N.D.C.C. § 65-04-19(3) by imposing an "impossible burden" on WSI to "precisely identify the number of employees" in cases where employers are noncompliant. WSI argues its investigator "did the best she could with the evidence" she obtained,

and "N.D.C.C. § 65-04-19 allows WSI the option to create a billing based on information available."

[¶10] We disagree with WSI to the extent it claims any information is sufficient to calculate premium liability when an employer is noncompliant. Although N.D.C.C. § 65-04-19(3) allows WSI to use information it obtains through its investigative process, premium liability "must be based on a proportion of the annual expenditure of money by the employer for the service of persons subject to the provisions of this title." N.D.C.C. § 65-04-04(1). Under § 65-04-04(1), the information WSI uses to calculate an employer's liability must be indicative of the premiums the employer owes and sufficiently reliable to support the amount.

[¶11] In this case, the ALJ found that even if there was evidence Alvidrez had employees, WSI still had not provided reliable information to support its imposition of premium liability:

> The greater weight of the evidence does not establish reliable payroll information for the Alvidrez account. WSI calculated the unpaid premiums attributed to Alvidrez based on the amount Brendel paid Alvidrez. WSI had no other information to base a premium calculation. Unlike the Frias account, WSI has no information regarding the individuals working for Alvidrez. However, there is no evidence that the total sum paid by Brendel to Alvidrez was wages. Without further information, the possibility that some of that amount included overhead and owner's draw or owner's wages cannot be ruled out. Even if there was evidence establishing Alvidrez had his own crew working on Brendel projects, the 1099 amount does not establish the payroll information necessary to calculate the premium.

[¶12] The ALJ's finding that the payments from Brendel to Alvidrez were not reliable evidence to establish premium liability is supported by the record. The payments and their corresponding notations do not provide information to establish whether Alvidrez expended any money to employ workers. Even if we agree with WSI that Alvidrez could not have completed all of the work by himself, we do not agree that fact definitively establishes he had employees. A subcontractor could hire another independent contractor. In this case, there is

5

no evidence of any payments from Brendel to Frias. As the ALJ noted, it is possible Alvidrez and Frias shared the same crew. Based on this record, a reasoning mind reasonably could determine the ALJ's finding concerning the unreliability of the payroll information is proven by the weight of the evidence from the entire record.

IV

[¶13] The judgment is affirmed.

[¶14] Jon J. Jensen, C.J.
      Gerald W. VandeWalle
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte